```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF MISSOURI
                         EASTERN DIVISION
```

TIMOTHY GARBO,                    )
                                  )
         Plaintiff,               )
                                  )
    v.                            )    No. 4:08 CV 570 DDN
                                  )
MICHAEL J. ASTRUE, Commissioner   )
of Social Security,               )
                                  )
         Defendant.               )

**MEMORANDUM**

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff Timothy Garbo for supplemental security income under Title XVI of the Social Security Act (Act), 42 U.S.C. § 1381, et seq. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 8.) For the reasons set forth below, the undersigned remands the action to the Commissioner.

**I. BACKGROUND**

Plaintiff, who was born on May 28, 1991, and was fifteen years old at the time of his hearing, filed an August 4, 2005 application for child's supplemental security income (SSI) under Title XVI. (Tr. 53-55, 131, 134.) He alleged an onset date of disability of August 1, 2001 due to attention deficit hyperactivity disorder (ADHD). (Tr. 129.) The claim was denied on initial review. (Tr. 16, 46-50.) Plaintiff requested a hearing, appealing directly to the ALJ.[1] (Tr. 45.) On August 11, 2006, following a hearing, the ALJ found Timothy not disabled in an on-the-record decision. (Tr. 177, 8-15.) On February 28, 2008, the Appeals Council denied his request for review. (Tr. 3-5.) Thus,

---

[1] Missouri is one of several test states participating in modifications to the disability determination procedures which apply in this case. 20 C.F.R. § 416.1406, 416.1466 (2007). These modifications include, among other things, the elimination of the reconsideration step. See id.

the decision of the ALJ stands as the final decision of the Commissioner.

## II. MEDICAL AND SCHOOL HISTORY

Engin Taysi, M.D., a psychiatrist, began treating Timothy in 2002. Dr. Taysi diagnosed Timothy with ADHD, Oppositional Defiant Disorder (ODD),[2] major depression, and recurrent bipolar disorder. (Tr. 134.)

Beginning on May 31, 2005, Timothy was suspended from Cross Keys Middle School for ten days after he had received ten bus referrals over the past school year. The most recent incident included indecent and inappropriate remarks to the bus driver. (Tr. 58, 61.)

A June 2, 2005 notice of action issued by the Special School District of St. Louis County revealed that a Joint Review Committee concluded that a special education evaluation was not necessary because there was no documentation to support a suspicion that Timothy had an educational disability. (Tr. 60.)

On June 3, 2005, Timothy's parents were notified that he had not passed his classes for the academic year and would be retained in the current grade. His cumulative grade point average was .5. (Tr. 59, 62.) On August 5, 2005, Stacy Davids, M.D., a psychiatrist, examined Timothy for purposes of his Individualized Education Program (IEP). Dr. Davids concluded that Timothy's "symptoms significantly impair his ability to function in an academic setting." (Tr. 165.) Dr. Davids noted Timothy's family's lack of health insurance resulted in him not receiving any mental health care during the past academic year, causing "very serious" academic and behavioral problems. (Id.) Dr. Davids believed Timothy's problems would improve somewhat with new medications and an IEP. (Id.)

On October 6, 2005, at the Administration's request, Timothy was examined by Sherman Sklar, licensed psychologist. (Tr. 156-61.) Dr. Sklar reported Timothy was very verbal, his attitude was flippant and defiant, and his cooperation was poor. Timothy reported drinking

---

[2]A mental disorder of childhood or adolescence marked by a pattern of disobedient, negativistic, and provocative opposition to authority figures. Stedman's Medical Dictionary 457 (25th ed. 1990).

-2-

alcohol and using marijuana. (Tr. 159.) Dr. Sklar diagnosed ADHD and ODD, assigned a GAF score of 50, and concluded Timothy's prognosis was poor. (Tr. 160.)

On April 2, 2006, Timothy was hospitalized for two days for abusing Adderall, a prescription stimulant he had been taking to treat his ADHD. Timothy reported abusing the Adderall since he began taking it. At that time he also reported abusing alcohol. Attending physician Amad B. Ardekani, M.D., described Timothy as extremely agitated, hostile, and angry, and assigned him a GAF score of less than 30. (Tr. 139.) The Adderall was discontinued and other medication started. Dr. Ardekani diagnosed bipolar disorder, ADHD, and substance abuse. (Tr. 135-54.)

A May 24, 2006 notice of action issued by the Special School District of St. Louis County informed Timothy's mother that a proposed initial evaluation was now needed. (Tr. 69.)

On June 21, 2006, Timothy was informed that he would be offered educational services at the Mark Twain Student Support Center, part of the Ferguson Florissant School District, starting in the fall of 2006. (Tr. 57.) The District's Director of Alternative Education believed the small class size and individualized instruction would be beneficial to him. (Id.)

On June 23, 2006, Dr. Taysi submitted a report, stating that Timothy had refused to attend school this year; became very anxious at times; and did not function well in society because of his mental health condition. He assigned a GAF score of 55. (Id.) Timothy's medications then included Abilify, for depression and bipolar disorder, Wellbutrin, an anti-depressant, and Buspar, for anxiety. Dr. Taysi's report indicated Timothy had been hospitalized in April of that year for anxiety attacks. (Tr. 134.)

Newly submitted evidence includes records from DePaul Health Center, St. John's Mercy Medical Center, Dr. S. Battula, and counselor Ricky Lomax. (Doc. 3, Exs. 1-4.) Timothy was hospitalized at DePaul Health Center from September 11 through 15, 2006 for increased destructive and aggressive behavior at home following his parents' recent separation. (Doc. 13, Ex. 3 at 33.) His provisional diagnoses

were Attention Deficit Disorder (ADD), anxiety disorder, and substance abuse disorder. Attending physician James E. Edwards, M.D., assigned a GAF score of "about 30."

On February 26, 2007 Timothy was seen in the emergency room of St. John's Mercy Medical Center following an anger outburst. (Doc. 13, Ex. 4.) At that time he had not been compliant with his medications for approximately two months, stating that his mother had not been filling the prescriptions, possibly due to lack of insurance coverage. (Doc. 13, Ex. 4 at 3, 10.) Clinical impression and tentative diagnoses were bipolar disorder and ADHD. (Id. at 8-9.)

Timothy was seen by psychiatrist S. Battula from February 28, 2007 to April 23, 2008. At that time Timothy had been expelled from school and was not being home schooled. Dr. Battula diagnosed an anxiety disorder, ADD, cannabis abuse, and bipolar disorder. His medications included Adderall, Buspar, and Tenex, an anti-hypertensive medication. (Doc. 13, Ex. 1.)

Timothy saw counselor Ricky Lomax for family and individual counseling from March 3 through July 3, 2007. Lomax's records are largely illegible. (Doc. 13, Ex. 2.)

An undated and unsigned Teacher Questionnaire from Cross Keys Middle School is included in the record. (Tr. 90-97.) At that time Timothy was in the 8th grade. The teacher had known Timothy for one year and saw him for 43 minutes per school day. The teacher reported that Timothy had no problems acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating others, and caring for himself. The teacher reported Timothy missed school due to truancy. The teacher stated that Timothy had expressed his desire to a number of teachers to drop out of school when he turns 16, and that she believed Timothy was capable of understanding and completing his class work, but shows no desire or motivation to do so. (Id. at 97.)

**The Hearing**

On June 26, 2006, a pre-hearing conference was conducted. (Tr. 171-74.) At the conference counsel for plaintiff indicated that

additional mental health records may exist but that he was unable to obtain them. Counsel stated that Dr. Taysi[3] had provided only summaries, without any supporting documentation. (Tr. 171.) Counsel stated that it was very difficult to obtain mental health care records from providers. The ALJ agreed, but stated that it would be in Timothy's best interest to have as much medical information included in the record as possible. (Tr. 172.) The ALJ also indicated that in light of Timothy's polysubstance abuse, she would like any detox records counsel obtained included as part of the record. The ALJ continued the hearing for one month so that counsel could attempt to obtain the additional medical documentation. (Tr. 172-73.)

On August 10, 2006, a hearing was conducted. However, no testimony was taken. (Tr. 175-80.) Counsel stated he was unsuccessful in his attempt to obtain psychiatric reports, rather than summaries, from Timothy's treating psychiatrist, because the psychiatrist had refused to provide that information, and therefore the court was "stuck with the record as it is." (Tr. 178.)

### III. DECISION OF THE ALJ

On September 19, 2006, the ALJ issued an unfavorable decision. (Tr. 8-15.) The ALJ found that Timothy had not engaged in substantial gainful activity. (Tr. 11.) The ALJ found that the medical evidence showed Timothy suffered from ADHD and polysubstance abuse. The ALJ found that the medical evidence established that Timothy did not have an impairment or combination of impairments either listed in or medically equal to one listed in Part B, of Appendix 1, Subpart P, Regulations No. 4.

The ALJ cited the Teacher Questionnaire, specifically that no problems had been observed in Timothy with respect to each of his domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and

---

[3]Dr. Taysi's name is spelled phonetically in the record as "Tossy."
.

-5-

manipulating objects, and caring for himself, and his functioning was considered to be age appropriate in those domains. The ALJ noted the teacher found Timothy capable of understanding and completing his class work, but that he showed no desire or motivation to do so. (Tr. 12.)

The ALJ noted Timothy's May 31, 2005 ten-day suspension from school. (Tr. 12, 61.) She noted the June 2, 2005 determination by the Special School District of St. Louis County that a special education evaluation was not necessary (Tr. 12, 60), as well as the subsequent year's report from the Director of Alternative Education for the Ferguson-Florissant School District that Timothy was being offered educational services for the following school year. (Tr. 12, 66.)

The ALJ considered Timothy's subjective complaints pursuant to Social Security Ruling 96-7p, as well as the entire record, including Dr. Taysi's statements. The ALJ found Dr. Taysi's statements of limited evidentiary weight, despite his being a treating physician, because Dr. Taysi stated Timothy's April 2006 hospitalization was due to anxiety attacks, even though that hospital record makes no mention of anxiety attacks. She also noted Dr. Taysi reported that Timothy was compliant with his appointments, but failed to mention his noncompliance with his medications, and that Timothy had shown positive drug screens for amphetamine, cannabis, and alcohol. Accordingly, the ALJ considered Timothy's functioning in his domains based on the entirety of the record, and not solely on the treating psychiatrist's conclusions.

Because Timothy did not have an impairment or combination of impairments which met or equaled the Listing of Impairments, the ALJ proceeded to discuss whether he had an impairment or combination of impairments which were the functional equivalent of the listed impairments. Specifically, the ALJ cited the Teacher Questionnaire which indicated that Timothy was capable of acquiring and using information, and of attending and completing tasks when motivated to do so, but that he has not wanted to do so. The ALJ noted that Timothy was scheduled to attend alternative school beginning in the fall 2006 for his conduct, not his inability to learn, and that his domains for acquiring and using information and attending and completing tasks were less than markedly impaired. She noted that the Teacher Questionnaire

cited above reported no problems had been observed for interacting and relating with others, and in fact, Timothy spent weekends with friends abusing drugs and alcohol. The ALJ noted that based on the evidence of record, Timothy does not like authority figures and demonstrates hostile behavior in order to avoid doing things he does not want to do, such as attending school.

The ALJ found that Timothy's overall domain for interacting and relating with others was less than markedly impaired; that he had no restrictions in the domains of moving about and manipulating objects and caring for himself; and that he was able to perform at an age appropriate level. She noted the record did not contain any physical health concerns, but that Timothy had emotional difficulties exacerbated by his polysubstance abuse. (Tr. 13.)

The ALJ found Timothy had chosen to abuse both drugs and alcohol, and that his substance abuse adversely affected his ability to adequately control his ADHD. She concluded the record did not reflect that he had lost the voluntary ability to stop his drugs and alcohol use, but that he simply chooses to do what he wants to do and attempts not to do things he is uninterested in. The ALJ concluded his domain of health and physical well being was less than markedly impaired, and that based on the entirety of the record, Timothy's allegations of disabling limitations were not credible. (Tr. 14.)

The ALJ concluded Timothy did not have two domains of functioning which were markedly impaired or one domain which was extremely impaired. She concluded that his condition is not the functional equivalent of the severity of the Listing of Impairments, and therefore he was not disabled under the Act. (Tr. 14.)

### IV.  GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. <u>Pelkey v. Barnhart</u>, 433 F.3d 575, 577 (8th Cir. 2006). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." <u>Id.</u> In determining whether the evidence

is substantial, the court considers evidence that detracts from, as well as supports, the Commissioner's decision.  See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000).  As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently.  See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least 12 months.  See 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A).  A five-step regulatory framework governs the evaluation of disability in general.  See 20 C.F.R. § 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Fastner v. Barnhart, 324 F.3d 981, 983-84 (8th Cir. 2003).  If the Commissioner finds that a claimant is disabled or not disabled at any step, a decision is made and the next step is not reached.  20 C.F.R. § 416.920(a)(4).

In determining whether a claimant under the age of eighteen is disabled, the ALJ undertakes a sequential three-step evaluation.  20 C.F.R. § 416.924(a). The first step is to inquire whether the claimant is engaged in substantial gainful activity.  Id.  The second step is to ascertain whether the impairment or combination of impairments is severe.  Id.  The third step is to determine whether the claimant has an impairment or impairments that meet, medically equal, or functionally equal a listed impairment.  Id.  A claimant will not be considered disabled unless he meets the requirements for each of these three steps. Id.

If a child has a severe impairment or combination of impairments that does not meet or medically equal any listing, the Commissioner will decide whether the plaintiff has limitations that "functionally equal the listings" of disabling conditions promulgated by the Commissioner. See 20 C.F.R. § 416.926a(a).  To functionally equal the listings, the impairment or impairments must be of listing-level severity.  Id.  In

-8-

other words, to be entitled to benefits, the claimant's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning. Id.; Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 665 (8th Cir. 2003).

There are six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). A child has a marked limitation in a domain if the impairment "interferes seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). An extreme limitation "interferes very seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3).

When evaluating a claimant's ability to function in each domain, the Commissioner asks for and considers information that will help to answer the following questions. What activities is the child able to perform? What activities is the child unable to perform? Which of the child's activities are limited or restricted compared to other age-equivalent children who do not have impairments? Where does the child have difficulty with activities - at home, in childcare, at school, or in the community? Does the child have difficulty independently initiating, sustaining, or completing activities? What kind of help does the child need to do activities, how much help is needed, and how often is it needed? 20 C.F.R. § 416.926a(b)(2)(i)-(vi).

These questions are not, singularly or as a whole, the only factors useful to determine whether or not a child has a "marked" or "extreme" limitation. 20 C.F.R. § 416.926a(e)(2),(4)(i). If applicable, test scores can be used in combination with other factors, observations, and evidence to determine the level of impairment. Id. "Marked" or "extreme" limitations as defined by test scores are not automatically conclusive if additional evidence in the record shows a pattern of behavior inconsistent with those scores. See 20 C.F.R. § 416.926a(e)(4).

-9-

## V. DISCUSSION

Timothy's counsel argues the ALJ erred by: (1) failing to give adequate weight to the opinion of Dr. Taysi, Timothy's treating psychiatrist, in violation of the applicable regulation,[4] 20 C.F.R. § 404.927 (d)(2)1527; (2) ignoring the opinion of Dr. Sklar, the State agency non-examining psychologist, in violation of Social Security Ruling 96-6p; (3) failing to evaluate his mental impairments and resulting functional limitations as required under 20 C.F.R. § 416.920a.

Counsel also seeks remand under Sentence Six for the purpose of submitting additional medical evidence not previously considered with respect to Timothy's claim for benefits. In support, counsel submitted the medical records of: (1) Dr. S. Battula, a psychiatrist, dated February 28, 2007 to April 23, 2008; (2) Ricky Lomax, Licensed Professional Counselor, dated March 2, 2007 through July 3, 2007; (3) DePaul Hospital, dated September 11, 2006 to September 15, 2006; and (4) St. John's Mercy Medical Center, dated February 26, 2007. Counsel asserts that the evidence is new, material, and was unavailable at the time of the administrative action. The Commissioner argues the new evidence is cumulative and not substantially different from the evidence before the ALJ at the time of the hearing.[5]

This court agrees the new evidence warrants a remand. A Sentence Six remand is authorized in only two limited situations: (1) where the Commissioner requests a remand before answering the complaint of a claimant seeking reversal of an administrative ruling, or (2) where new and material evidence is adduced that was for good cause not presented during the administrative proceedings. See 42 U.S.C. § 405(g); Shalala

---

[4]Plaintiff's claim for disability benefits was filed under Title XVI of the Social Security Act. The Commissioner's regulations under this Title are found in part 416 of Title 20 of the Code of Federal Regulations. The relevant regulations are practically identical to those in Part 404 which relate to claims made under Title II of the Act.

[5]The court notes that almost all of the hearing session conducted by the ALJ was taken up with the ALJ and plaintiff's counsel discussing the failure of the medical providers from responding with relevant medical records. No substantive evidence was acquired during this hearing. (Tr. 171-74.)

-10-

v. Schaefer, 509 U.S. 292, 297 n.2 (1993); Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir. 1993).

New evidence does not include cumulative evidence which would not have changed the ALJ's decision. Riley v. Shalala, 18 F.3d 619, 623 (8th Cir. 1994). Good cause for the failure to present the evidence previously may be shown by the fact that the subject evidence did not exist previously. Goad v. Shalala, 7 F.3d 1397, 1398 (8th Cir. 1993). Materiality, which is treated as a separate test under § 405(g), relates to the claimant's condition on or before the date of the ALJ's decision. Id. To be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Commissioner's decision. Id.

The court concludes that the additional evidence meets the above standard because it is new and material, and because counsel has demonstrated good cause for the failure to present the evidence, i.e., the subject evidence did not exist previously. The court therefore concludes the additional evidence warrants remand.

## VI. CONCLUSION

For the reasons set forth above, the action is remanded to the Commissioner of Social Security under Sentence Six of 42 U.S.C. § 405(g). Upon remand, the ALJ shall (1) consider and evaluate the new evidence, and discuss the weight accorded the new evidence; and (2) in light of counsel's inability to obtain the claimant's psychiatric records, contract with a new psychiatrist to conduct a consultative examination of the claimant.

An appropriate order of remand is issued herewith.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 25, 2009.